UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN JAMES and ROSETTE MOLNAR, : | |
| : | Civil Case Number |
| *Plaintiffs*, : | |
| : | 3:16-CV-835 (VLB) |
| v. : | |
| : | March 31, 2018 |
| LOPEZ MOTORS, LLC, : | |
| : | |
| *Defendant*. : | |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [DKT. NO. 14]**

I. Introduction

Plaintiffs John James and Rosette Molnar bring this action for damages arising out of Defendant Lopez Motors, LLC's ("Lopez Motors") alleged violations of the Truth in lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, et seq. Plaintiffs also assert state law claims for breach of the implied warranty of merchantability, for violation of the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. §§ 36a-770 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a et seq. Now before the Court is Plaintiffs' Motion for Default Judgment, in which Plaintiffs' seek an award of $2,000 in statutory damages under TILA, $1,000 in statutory damages pursuant to EFTA, actual damages of $2,366 pursuant to RISFA, and punitive damages of $7,500. Plaintiffs also seek an order affirming that the contract was rescinded and for post-judgment interest pursuant to Conn. Gen. Stat. § 37-3a. For the reasons that follow, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

1

II. **Background**

On December 11, 2015, Molnar visited Lopez Motors and looked at a 2010 Volkswagen Jetta (the "Vehicle"). [Dkt. No. 1 ("Compl.") ¶ 9]. While Lopez Motors told Molnar that it had purchased the Vehicle from a friend, in reality, the Vehicle had been offered for sale by Whaling City Ford less than two months before Molnar viewed the Vehicle. *Id.* ¶¶ 10-11. Molnar agreed to purchase the Vehicle from Lopez Motors. *Id.* ¶ 12. James was not present at the dealership, but he gave Molnar verbal permission to enter into a contract and sign the contract documents on his behalf. *Id.* ¶ 13. Molnar paid a deposit of $500.00 and gave Lopez Motors two post-dated checks each in the amount of $500.00 dated January 15, 2016 and January 29, 2016. *Id.* ¶ 14.

Lopez Motors prepared a Purchase Order and a Retail Installment Contract that listed the buyer as James and the co-buyer as Molnar. *Id.* ¶ 15. Lopez Motors was required by Connecticut law, specifically Conn. Gen. Stat. § 42-224, to provide a written warranty that the Vehicle would be mechanically operational and sound for a period of 60 days or 3,000 miles because the Vehicle was six model years old and was sold for more than $5,000. *Id.* ¶ 16. Lopez Motors did not provide this express warranty and attempted to disclaim the implied warranty of merchantability on the purchase order. *Id.* ¶ 17.

The Retail Installment Contract included a charge of $1,480 for a service contract that Plaintiffs neither requested nor desired. *Id.* ¶ 19. When Molnar asked Lopez Motors about the service contract charge, she was told that she was required to purchase the service contract as a condition of financing. *Id.* ¶ 20.

2

Defendant also required Plaintiff to enroll in automatic withdrawals of the loan payments as a condition of financing the Vehicle. *Id.* ¶ 48. The Retail Installment Contract stated that the amount of the down payment was $2,000, even though only $1,500 had been requested or paid. *Id.* ¶ 21. Consequently, the cash price listed for the Vehicle was inflated by $500, and Plaintiffs paid sales tax on that excess $500. Id. ¶ 22.

Molnar executed the Retail Installment Contract and agreed to be liable for the payments for James's Vehicle without compensation, rendering her a "cosigner" within the meaning of the Federal Trade Commission's Credit Practices Rule. *Id.* ¶ 23; *see also* 16 C.F.R. § 444.1 (defining "cosigner" as "[a] natural person who renders himself or herself liable for the obligation of another person without compensation."). Molnar executed the Retail Installment Contract by electronically signing her name and James's name on a pad, and she was permitted the view the terms of the Retail Installment Contract on a computer monitor. *Id.* ¶ 24. The TILA disclosures were not made to James in any form or manner prior to the time that he became obligated under the RISC. *Id.* ¶ 25.

After Molnar executed the Purchase Order and Retail Installment Contract, Lopez Motors delivered the Vehicle to her. *Id.* ¶ 26. Lopez subsequently assigned the Retail Installment Contract to Credit Acceptance Corporation, a sales finance company located in Michigan. *Id.* ¶ 27. Within weeks of delivery of the Vehicle, and within the sixty day and 3,000 mile warranty period, Plaintiffs experienced mechanical problems and the vehicle's coolant light illuminated. *Id.* ¶ 28. Plaintiffs brought the Vehicle back to Lopez Motors for repairs on multiple

3

occasions, but it was unable to repair the Vehicle. *Id.* ¶ 29. On February 1, 2016, Plaintiffs brought the Vehicle to Lopez Motors one final time for repairs. *Id.* ¶ 30. At that time, Lopez Motors refused to repair the Vehicle. *Id.* ¶ 31. Subsequently, Credit Acceptance paid Lopez Motors the $866 Plaintiffs had paid to Credit Acceptance in monthly payments.

On or about March 7, 2016, Molnar spoke with David Brown of Lopez Motors, who offered to permit her to replace the Vehicle with a different vehicle. *Id.* ¶ 34. On March 8, 2016, Molnar advised Brown that Plaintiffs did not want to select another vehicle, and she demanded that Lopez Motors repair the Vehicle. *Id.* ¶ 35. Brown told Molnar that the Vehicle could be repaired, but Plaintiffs would need to sign a new contract for the Vehicle in order to retake possession. *Id.* ¶ 36. On April 12, 2016, Plaintiffs requested through counsel that they be allowed to have the Vehicle inspected by an independent facility prior to entering into the new proposed contract. *Id.* ¶ 37. Lopez Motors responded by stating that it would refund the money paid by Plaintiffs. *Id.* ¶ 38.

Notwithstanding that promise, Lopez has failed to refund the amounts paid by Plaintiffs, including $1500 to Lopez Motors and $866 to Credit Acceptance, all of which Lopez Motors has wrongfully retained.

III. <u>Legal Standard</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See, e.g., New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). First, a plaintiff must acquire an entry of default against the defendant in question. Fed. R. Civ. P. 55(a). Second, after the default is entered,

a plaintiff must either request a default judgment from the clerk or move the court for a default judgment. Fed. R. Civ. P. 55(b)(1)-(2). The clerk can enter a default judgment only if the amount sought is a sum certain or a sum that can be made certain by computation. Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for default judgment." Fed. R. Civ. P. 55(b)(2). "The determination of whether to grant a motion for default judgment lies within the sound discretion of the district court." *Int'l Brands USA, Inc. v. Old St. Andrews Ltd.*, 349 F. Supp. 2d 256, 261 (D. Conn. 2004) (citing *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). Plaintiff properly served Defendants of the instant action, but Defendant has failed to respond or enter a notice of appearance.

The Court "may forgo an evidentiary hearing 'as long as [it] ensure[s] that there [is] a basis for the damages specified.'" *Andrade*, 2012 WL 3059616, at *3 (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Because the Plaintiffs have offered affidavits and exhibits in support of their claim for damages, no evidentiary hearing is required.

IV. Discussion

Rule 8(a) of the Federal Rules of Civil Procedure governs whether the allegations in the pleadings state a valid cause of action. Fed. R. Civ. P. 8(a) (establishing that a claim for relief must contain a "short and plain" statement of the claim). Specifically, the Supreme Court has held that to state a cause of action, a plaintiff need "only [allege] enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

5

"Upon entry of a default judgment for 'failure to plead or otherwise defend' against a complaint, a defendant admits every 'well-pleaded allegation' of the complaint except those relating to damages." *Andrade v. Kwon*, No. 3:08-cv-479 (SRU), 2012 WL 3059616, at *3 (D. Conn. Mar. 26, 2012) (citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). Accordingly, the Court takes all of the above allegations, except those relating to damages, as true.

A. <u>Truth in Lending Act</u>

15 U.S.C. § 1638 requires that creditors in consumer credit transactions disclose the identity of the creditor, the amount financed, a statement of the consumer's right to obtain a written itemization of the amount financed, the finance charge, the APR, the total payments and the number, amount, and due dates or period of payments scheduled to repay the total payments. 15 U.S.C. § 1638(a). These disclosures must be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). This form may be electronic. *Id.* Plaintiff alleges that Defendant violated TILA by failing to disclose the cost of the service contract as part of the finance charge.

A finance charge is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction." 15 U.S.C. § 1605(a). In other words, "a creditor is obligated under § 1638(a)(3) to disclose, as a finance charge, any costs charged to customers buying on credit,

6

but not charged to customers buying with cash, in [a] comparable transaction." *Joseph v. Excellence Auto Trade LLC*, No. 16 CV 1534 (FB)(LB), 2017 WL 1157178, at *4 (E.D.N.Y. Feb. 10, 2017), *report and recommendation adopted,* No. 16-CV-1534-FB-LB, 2017 WL 1154999 (E.D.N.Y. Mar. 27, 2017).

Plaintiffs allege in their complaint and affidavits that they were required to purchase a service contract as a condition of receiving credit. While it is possible that cash customers could also choose to purchase a service contract, such a purchase was not required of cash customers. Thus, the service contract is a finance charge as defined by 15 U.S.C. § 1605(a). Accepting the allegations of the Complaint as true, as the Court is required to do, Defendant misrepresented to Plaintiffs the amount of the finance charge on the Vehicle in violation of TILA. Plaintiff's motion for default judgment on their TILA claim IS GRANTED.

TILA provides that creditors who fail to comply with disclosure requirements are liable for "(1) any actual damage sustained by such person as a result of the failure" and "(2) in the case of an individual action twice the amount of any finance charge in connection with the transaction . . . except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000." 15 U.S.C. § 1640(a). Violators of TILA are also liable for reasonable attorney's fees and costs. 15 U.S.C. § 1640(a)(3). Here, Plaintiffs do not claim actual damages from the TILA violation, and the undisclosed finance charge is $1,480. Twice the finance charge exceeds the statutory maximum damages; thus Plaintiffs are entitled to damages in the amount of $2,000.

7

## B. Electronic Funds Transfer Act

EFTA provides that "no person may . . . condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers." 15 U.S.C. § 1693k(a). Accepting as true Plaintiffs' allegation that Defendant required Plaintiffs to set up automatic withdrawals of the loan payments, Defendant violated EFTA. Default judgment on Plaintiffs' EFTA claim must therefore be GRANTED.

A plaintiff may recover under EFTA "(1) any actual damage sustained by such consumer as a result of [an EFTA violation]; [or] (2)(A) in the case of an individual action, an amount not less than $100 nor greater than $1,000." 15 U.S.C. § 1693m(a). A plaintiff who prevails on an EFTA claim may also recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1693m(a)(3). In determining the amount of liability in any action under 15 U.S.C. § 1693m(a)(2)(A), the court shall consider, among other relevant factors, "the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional." 15 U.S.C. § 1693m(b)(1).

Plaintiffs have offered no evidence that Defendant knew it was violating any law by requiring Plaintiffs to enroll in automatic payments or that conditioning financing on enrolling in automatic withdrawals was Defendant's regular practice. Additionally, Plaintiff only made two automatic payments as a result of Defendant's violation of EFTA, neither of which were for more than the agreed-to monthly payment, and Plaintiffs do not allege that they suffered any

8

actual damages. Consequently, damages at the low end of the range set forth in section 1693m(a)(2)(A) are appropriate. The Court therefore awards Plaintiffs $100 in statutory damages for violations of EFTA together with the costs of the action; and having prevailed, Plaintiffs may file a motion for attorney's fees.

### C. Retail Installment Sales Finance Act

RIFSA sets forth the conditions governing retail installment sales contracts under Connecticut law in Conn. Gen. Stat. § 36a-771. It provides that

> Every retail installment contract shall be in writing, shall contain all the agreements of the parties and shall be completed as to all essential provisions prior to the signing of the contract by the retail buyer. No installment contract shall be signed by the retail buyer when such contract contains blank spaces to be filled in except that this provision shall not apply to serial number or other identifying marks which are not available for description at the time of execution of such contract. The retail seller shall deliver to the retail buyer a true and complete executed copy of the retail installment contract at the time the retail buyer signs such contract.

Conn. Gen. Stat. § 36a-771(a). A TILA violation of the type present in this case also constitutes a violation of RISFA. See *Tirado v. Ofstein*, No. HHDCV054014648S, 2008 WL 902506, at *13 (Conn. Super. Ct. Mar. 14, 2008) (holding that where a defendants charged a consumer for vendor's single interest insurance as a condition of obtaining credit, and did not disclose the insurance premium as part of the finance charge on the retail installment contract, the defendants violated TILA, and further holding that "defendants' violations of TILA constitute violations of RISFA, pursuant to General Statutes § 36a-771(b)"); *see also Sterling v. Farran & Ezedine, LLC*, No. 3:10-CV-1119 WWE, 2011 WL 219697, at *3 (D. Conn. Jan. 20, 2011) ("A violation of TILA also constitutes a violation of RISFA."). Having adequately alleged that the failure to disclose the cost of the

9

service contract as part of the finance fee was a TILA violation, therefore, Plaintiffs are also entitled to default judgment on their RIFSA claim.

Plaintiffs seek a return of all amounts paid under the Retail Installment Contract and rescission of the contract as a remedy for Defendant's RISFA violations, on the ground that the Vehicle was returned to the Defendant in substantially the same condition as when Plaintiffs purchased it. "[A] retail buyer is entitled to seek a rescission of a retail instalment contract when the retail seller has not complied with the provisions of" section 36a-771(a). *Keyes v. Brown*, 155 Conn. 469, 476 (1967); *see also Barco Auto Leasing Corp. v. House*, 202 Conn. 106, 113 (1987) ("[T]here is no question that the defendants are entitled to rescission of the contract as an implied remedy under RISFA"). While rescission is ordinarily used as a remedy in fraud actions, where a party has executed a contract in reliance on a misrepresentation or omission, its availability in RIFSA cases is not so constrained; rescission is available even where a RIFSA violation is based upon a technical defect under TILA. *See Tirado*, 2008 WL 902506, at *13 (holding that TILA violation of failing to properly disclose a $245 premium for vendors single interest insurance as part of a finance fee also constituted a RIFSA violation, and that plaintiff was entitled to rescission where dealer had possession of the vehicle at issue).

"It is well established in Connecticut that a condition precedent to the remedy of rescission is the offer by the party seeking that remedy to restore the other party to its former condition as nearly as possible." *Bonafide v. Tomun*, No. CV065002770S, 2008 WL 5505439, at *2 (Conn. Super. Ct. Dec. 11, 2008); *see also*

*Keyes*, 155 Conn. at 476 ("As a condition precedent to a rescission, the plaintiffs [are] required to allege and prove that they had restored or offered to restore [the defendant] to its former condition as nearly as possible."). Plaintiffs have established Defendant violated RIFSA and have returned the Vehicle which remains in Defendant's possession and are therefore entitled to rescission. Defendants are hereby ORDERED to return Plaintiffs' $1,500 cash deposit and the $866 in payments made pursuant to the Retail Installment Contract.

### D. Breach of Implied Warranty of Merchantability

Plaintiffs next allege that Defendant breached the implied warranty of merchantability by selling Plaintiffs a vehicle that was not "fit for the ordinary purposes for which [it was] sold," Conn. Gen. Stat. § 42a-2-314. Plaintiffs have adequately alleged that due to the Vehicle's mechanical problems, the Vehicle was not "fit for the ordinary purposes it was intended for, i.e., normal and reliable driving," *Tirado*, 2008 WL 902506, at *6.

Further, while Plaintiffs signed an "as is" section on the Vehicle's purchase order, Connecticut law barred Defendant from disclaiming the implied warranty of merchantability on the purchase order by relying on this "as is" agreement. Conn. Gen. Stat. § 42-224 provides that "[a] used motor vehicle may be sold 'as is' by a dealer only if its cash purchase price is less than three thousand dollars or if such used motor vehicle is seven years of age or older, which age shall be calculated from the first day in January of the designated model year of such vehicle." Conn. Gen. Stat. § 42-224(a). Plaintiffs have alleged that the Vehicle was less than seven years of age or older at the time of purchase, and that the

11

purchase price was well over three thousand dollars. Therefore, Defendant was not entitled to sell the Vehicle to Plaintiffs "as is," and default judgment must be GRANTED as to Plaintiffs' claims for breach of the implied warranty of merchantability. Actual damages for this breach are $2,366, or the same damages the Court is awarding for Defendant's RIFSA violation.

E. <u>Connecticut Unfair Trade Practices Act</u>

To establish a CUTPA violation, a plaintiff must show that the defendant engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). "It is not necessary that the conduct at issue violate some other law to constitute a CUTPA violation, but the plaintiffs must prove wrongful conduct." *Edmands v. Cuno, Inc.*, 277 Conn. 425, 892 A.2d 938, 954 (2006).

> It is well settled that in determining whether a practice violates CUTPA [Connecticut courts] have adopted the criteria set out in the cigarette rule by the Federal Trade Commission for determining when a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businesspersons . . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

*Id.* at 955 n.16 (internal quotations and alterations omitted).

The Connecticut Supreme Court has held that violations of TILA offend public policy under CUTPA. *Cheshire Mortg. Serv., Inc. v. Montes*, 223 Conn. 80, 112 (1992). Additionally, when a TILA violation is coupled with another violation

that causes substantial injury, a CUTPA claim will lie. *Id.* at 113. Here, Plaintiffs have established that they suffered substantial harm when Defendant sold them a vehicle that was not in merchantable condition. Thus Plaintiffs have established a CUTPA violation that entitles them to actual damages.

<u>Punitive Damages</u>

Plaintiffs seek punitive damages in the amount of $7,500 for their state law claims. Upon finding a CUTPA violation, the court may award punitive damages. Conn. Gen. Stat. 42-110g(d). When calculating a punitive damages award, the Court may consider (1) whether the defendant's conduct was reckless, intentional or malicious; (2) whether the defendant's action was taken or omitted in order to augment profit; (3) whether the wrongdoing was hard to detect; (4) whether the injury and compensatory damages were small, providing a low incentive to bring the action; and (4) whether the award will deter the defendant and others from similar conduct, without financially destroying the defendant. *Ulbrich v. Groth*, 310 Conn. 375, 454 (2013) (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493-94 (2008)).

While the award of punitive damages is discretionary, courts frequently decline to award punitive damages where other statutes impose multiple damages. *See, e.g., Voll v. Dunn*, No. X10UWYCV126018520, 2014 WL 7461644, at *12 (Conn. Super. Ct. Nov. 10, 2014) ("In view of the award of treble damages, prejudgment and postjudgment interest, as well as attorneys fees, the court declines to award punitive damages."); *Torres v. Kershner Co.*, No. CV054007041S, 2010 WL 5573744, at *18 (Conn. Super. Ct. Dec. 13, 2010) ("The

13

court concludes punitive damages are not appropriate since it already ordered treble damages under the civil theft statute.").

The Court has awarded statutory damages in excess of Plaintiffs' actual damages and finds an additional award of punitive damages would be excessive. *Cf. Parris v. Pappas*, 844 F. Supp. 2d 271, 285 (D. Conn. 2012) (declining to award punitive damages under CUTPA where punitive damages had been awarded for a Federal Housing Act violation, and "plaintiff's recovery theory and the facts she relies on are coextensive with the punitive damages already awarded . . . . An additional punitive damages award under CUTPA will amount to a double recovery.")

V.  Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Judgment. The Clerk is directed to enter judgment against Defendants in the total amount of $4,466.00, which includes $2,366 in actual damages, $2,000 in statutory damages under TILA, and $100 in damages under EFTA. Plaintiff may move for attorney's fees and costs pursuant to 15 U.S.C. § 1640(a)(3) and/or 15 U.S.C. § 1693m(a)(3) within 28 days. Plaintiff may also recover post-judgment interest as provided by law. The Clerk is directed to close this file.

**IT IS SO ORDERED.**

                                                                /s/

                                 **Hon. Vanessa L. Bryant**
                                 **United States District Judge**

**Dated at Hartford, Connecticut: March 31, 2018**